UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TPI HOLDINGS, INC., and DOMINION ENTERPRISES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Civil Action No.: |
| v. | ) ) | |
| NAVIGATOR MULTIMEDIA, INC. and RUDY SCHELLENBERGER, | ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs TPI Holdings, Inc. and Dominion Enterprises (collectively "TPI")

state the following for their Complaint against Defendants Navigator

Multimedia, Inc. and Rudy Schellenberger (collectively "Defendants"):

## <u>Nature of the Action</u>

1.     This is an action at law and in equity for trademark infringement,

cybersquatting, and unfair competition arising under the federal Lanham Act,

codified as amended at 15 U.S.C. §§ 1051-1127, the Anticybersquatting Consumer

Protection Act, 15 U.S.C. § 1125(d), and state statutory and common law, arising out

of the Defendants' adoption and use of the trademark MX TRADER which is

confusingly similar to Plaintiffs' long-established and well-known TRADER marks.

US2008 1845638.1

**Jurisdiction and Venue**

2.    This Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 15 U.S.C. §§ 1331 and 1338.

3.    This Court has personal jurisdiction over Defendants because through their infringing interactive website, Defendants are transacting business within this district, have engaged in acts or omissions within this district causing injury, or have otherwise made or established contacts with this district sufficient to permit the exercise of personal jurisdiction.

4.    Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim have occurred and are occurring in this district.

**Parties**

5.    Plaintiff TPI Holdings, Inc. ("TPI") is a corporation organized under the laws of the State of Delaware with its principal place of business located in this District, in Atlanta, Georgia.  TPI is the owner of the trademarks and trademark registrations at issue in this suit.

6.    Plaintiff Dominion Enterprises ("Dominion") is a partnership organized under the laws of Virginia, with its principal place of business located in Norfolk, Virginia.  Dominion, an affiliate of TPI, is the licensee of the trademarks at issue in

2

this suit and the registrant of the domain names consisting of the trademarks at issue. TPI, Dominion, and their predecessors, licensees, and affiliates are collectively hereinafter referred to as "TPI" or "Plaintiffs."

7.    Defendant Navigator Multimedia, Inc. is a corporation with a principal place of business at 201-260 Harvey Ave., Kelowna, British Columbia, V1X 755, Canada. Defendant Navigator Multimedia, Inc. is the registrant of the domain name at issue in this case, and together with Defendant Schellenberger, operates a website under that domain name.

8.    Defendant Rudy Schellenberger is an individual who may be served at 267 Ernest Cates Road, Bethpage, Tennessee, 37022. Defendant Schellenberger has applied to register the infringing mark at issue in this case, and together with Navigator, operates a website under the domain name at issue.

9.    Defendants are acting jointly and severally to use and promote the infringing mark and domain name at issue in this case.

## FACTUAL BACKGROUND

### TPI's Trademark and Service Mark Rights

10.    For more than thirty years, TPI has adopted and used a family of trademarks that combine the term "TRADER" with numerous terms or phrases that refer to vehicles, including the marks AUTO TRADER, AERO TRADER, BOAT

3

TRADER, CYCLE TRADER, OLD CAR TRADER, BIG TRUCK TRADER, and RV TRADER, among others.  TPI has also adopted and used a number of TRADER-formative marks that combine TRADER with terms suggestive of classified advertising, such as FREE ADS TRADER, BARGAIN TRADER, TRADER ONLINE, and TRADER PLUS.  Collectively these marks are hereinafter referenced as the "TRADER Marks" or "TRADER Family of Marks."

11.    From the beginning, TPI used the TRADER Family of Marks in connection with a number of different print publications offering classified advertising distributed throughout the United States.  Since 1996, in addition to the print publications, TPI has also offered classified advertising online in connection with the TRADER Marks.

12.    TPI is the owner of multiple federal registrations for its TRADER Marks, including the following:

| Mark | Reg. No. | Reg. Date |
|------|----------|-----------|
| AERO TRADER | 2288805 | 10/26/1999 |
| AERO TRADERONLINE.COM | 2873918 | 08/17/2004 |
| ATV TRADERONLINE.COM | 2868892 | 08/03/2004 |
| AUTO TRADER | 2390815 | 10/03/2000 |
| AUTO TRADER | 1247037 | 08/02/1983 |
| AUTOTRADER.COM | 2381590 | 08/29/2000 |
| BARGAIN TRADER | 2294228 | 11/23/1999 |
| BARGAIN TRADER | 1207204 | 09/07/1982 |
| BARGAIN TRADERONLINE.COM | 2901427 | 11/09/2004 |
| BIG TRUCK TRADER | 2829945 | 04/06/2004 |

US2008 1845638.1

| Mark | Reg. No. | Reg. Date |
|------|----------|-----------|
| BIG TRUCK & EQUIPMENT TRADER | 1641262 | 04/16/1991 |
| BOAT & RV TRADER | 1450690 | 08/04/1987 |
| BOAT TRADER | 2389118 | 09/26/2000 |
| BOAT TRADER | 1208249 | 09/14/1982 |
| BOAT TRADERONLINE.COM | 2873930 | 08/17/2004 |
| COLLECTOR CAR TRADER | 2294233 | 11/23/1999 |
| COLLECTOR CAR TRADERONLINE.COM | 2873929 | 08/17/2004 |
| COMMERCIAL & BIG TRUCK TRADER | 3316348 | 10/23/2007 |
| COMMERCIAL TRUCK TRADER | 3605107 | 04/14/2009 |
| CYCLE TRADER | 2294240 | 11/23/1999 |
| CYCLE TRADER | 1627016 | 12/11/1990 |
| CYCLE, BOAT, & RV TRADER | 1450707 | 08/04/1987 |
| EQUIPMENT TRADER | 3420543 | 04/29/2008 |
| EQUIPMENT TRADER | 3605275 | 04/14/2009 |
| EQUIPMENT TRADERONLINE.COM | 2873928 | 08/17/2004 |
| FREE ADS TRADER | 1886026 | 03/28/1995 |
| HOUSE TRADER | 2909671 | 12/14/2004 |
| OLD CAR TRADER | 1911290 | 08/15/1995 |
| OLD CAR TRADER | 2348530 | 05/09/2000 |
| PICK-UP TRADER | 1644398 | 05/14/1991 |
| PICK-UP TRADER | 2295507 | 11/30/1999 |
| RV TRADER | 2294239 | 11/23/1999 |
| RV TRADER | 1822663 | 02/22/1994 |
| RV TRADERONLINE.COM | 2876679 | 08/24/2004 |
| SAILBOAT TRADER | 1612906 | 09/11/1990 |
| SAILBOATTRADERONLINE.COM | 3208475 | 02/13/2007 |
| TRADER DISTRIBUTION SERVICES | 2883861 | 09/14/2004 |
| TRADER ONLINE | 2302312 | 12/21/1999 |
| TRADER PLUS | 2885985 | 09/21/2004 |
| TRADER TIMES | 1718017 | 09/22/1992 |
| TRADERONLINE.COM | 3161680 | 10/24/2006 |
| TRUCK TRADER | 2817176 | 02/24/2004 |
| TRUCK TRADERONLINE.COM | 2871209 | 08/10/2004 |
| WALNECK'S CLASSIC CYCLE TRADER | 2288432 | 10/26/1999 |
| YACHT TRADER | 1648145 | 06/18/1991 |

5

| Mark | Reg. No. | Reg. Date |
|---|---|---|
| YACHT TRADER | 2349954 | 05/16/2000 |
| YACHT TRADERONLINE.COM | 3173201 | 11/21/2006 |

True and correct copies of print-outs from the U.S. Patent and Trademark Office online database showing these registrations are attached as Collective Exhibit A. All of these registrations constitute prima facie evidence, and those that are incontestable constitute conclusive evidence, of the validity of the marks and TPI's exclusive right to use the marks in connection with the goods and services specified in the registrations.

13.     Since the adoption of each of the TRADER Marks, TPI has made widespread and continuous use of them, and promoted them together, in connection with services offered to the public throughout the United States.

14.     Specifically, through its predecessors in interest, TPI began using its first TRADER mark, the AUTO TRADER mark, at least as early as 1974 to provide classified advertising respecting automotive vehicles. A true and correct copy of the front cover of an AUTO TRADER magazine is attached as Exhibit B.

15.     Beginning in at least 1996, TPI extended use of the AUTO TRADER mark to provide advertising and merchandising classifieds via an online electronic communications network. Since that time, TPI has featured its offerings under the AUTO TRADER mark at a website accessible under the autotrader.com domain

6

name. A true and correct print-out of the homepage reached through the domain name autotrader.com is attached as Exhibit C.

16.    In addition, TPI, through its predecessors in interest, expanded use of TRADER formative marks into multiple publications, and ultimately multiple websites, offering classified advertising in a wide variety of areas. For example, TPI began using the BARGAIN TRADER mark at least as early as 1975 to provide classified advertising in a number of categories of goods; the BOAT TRADER mark at least as early as 1976 to provide classified advertising respecting boats; and the CYCLE TRADER and AERO TRADER marks at least as early as 1978 to provide classified advertising respecting motorcycles and airplanes respectively.

17.    TPI also expanded its TRADER marks specifically in the motorcycle area to add CYCLE, BOAT & RV TRADER beginning in 1986 and WALNECK'S CLASSIC CYCLE TRADER in 1989. Thereafter, TPI added the RV TRADER mark in 1989 to provide classified advertising respecting RV's; the YACHT TRADER mark in 1990 to provide classified advertising respecting yachts and luxury boats; and the COLLECTOR CAR TRADER and OLD CAR TRADER marks in 1991 and 1995 respectively to provide classified advertising respecting niche market automotive vehicles. True and correct copies of representative front

7

covers of multiple magazines distributed under TPI's TRADER Marks are attached as Collective Exhibit D.

18.   Beginning in at least 1996, TPI extended use of the CYCLE TRADER, BOAT TRADER, RV TRADER, and AERO TRADER marks to provide advertising and merchandising classifieds respecting the various goods and services they featured via an online electronic communications network.  Since that time, TPI has featured its offerings under the CYCLE TRADER mark at its website at cycletrader.com and cycletraderonline.com.  Today, TPI's CYCLETRADER.COM website features over 158,000 ads, allowing users to post ads to sell their motorcycles or to search the ads in order to purchase a motorcycle.  The site enables users to browse by type of motorcycle, including motorcycles used for motocross, abbreviated and known to consumers and the trade alike as "MX."  Pages from TPI's cycletrader.com website showing this feature are attached as Exhibit E.

19.   Since 1996, TPI has similarly featured its offerings under the BOAT TRADER mark at its boattrader.com and boattraderonline.com websites, under the RV TRADER mark at its website at rvtraderonline.com, and under the AERO TRADER mark at its website at aerotrader.com and aerotraderonline.com.  In 1996, TPI also began using its TRADER ONLINE mark at traderonline.com, where it has for almost 15 years promoted all of its offerings under all of its TRADER marks.

8

Further, In 1999, TPI also began promoting its offerings under the YACHT

TRADER mark at its site at yachttraderonline.com and began promoting its

BARGAIN TRADER mark at its bargaintraderonline.com, bargaintrader.com, and

traderonline.com sites.  True and correct print-outs of representative homepages

reached through various TRADER domain names and/or featuring TRADER Marks

are attached as Collective Exhibit F.

20.    TPI has invested more than thirty years of continuous and substantial

corporate efforts and hundreds of millions of dollars to strengthen and promote the

reliability of goods and services provided under, and identified by, its family of

TRADER Marks.  TPI has distributed hundreds of millions of TRADER magazines

through tens of thousands of outlets, and online sites operated under the TRADER

marks have carried millions of ads and attract hundreds of millions of visitors

annually.

21.    As a result of TPI's substantial and continuous use and marketing of its

TRADER Marks, and of its websites and services offered in connection with them,

the marks have become extremely well known to the public as exclusive source

identifiers of TPI's high quality reliable services, and the public has come to expect

websites offering and publishing classified advertising in connection with TRADER

formative marks to be associated with TPI.

## Defendants' Wrongful Acts

22.    Long after TPI's marks had become well known as source identifiers

for TPI's advertising services, in an attempt to trade on TPI's good will, in

approximately January, 2009, Defendants Schellenberger adopted, began using, and

applied to the United States Patent and Trademark Office to register the mark MX

TRADER (the "Infringing Mark").  Acting in conjunction with Defendant

Schellenberger, Defendant Navigator registered the domain name mxtrader.net (the

"Infringing Domain Name").  A true and correct copy of the database search for the

Infringing Domain Name is attached as Exhibit G, and a true and correct copy of the

PTO record showing the trademark application is attached as Exhibit H.

23.    Defendants have used the MX TRADER mark and Infringing Domain

Name to operate a website (the "Infringing Site") that publishes advertising

classifieds, enabling third parties to advertise their motocross motorcycles for sale, in

direct competition with TPI's cycletrader.com site.  As shown in the homepage from

the Infringing Site attached hereto as Exhibit I, the site prominently displays the

Infringing Mark.

24.    Before Defendants began using the Infringing Domain Name and Mark,

Defendants had actual knowledge of TPI's TRADER Marks because of TPI's

longstanding and extensive use of them.  Defendants are also charged with

10

US2008 1845638.1

constructive knowledge of TPI's rights because of TPI's multiple trademark registrations.

25.     Defendants' mark is confusingly similar to Plaintiffs' family of marks because TRADER is a salient component of it, and Defendants have coupled a term that refers to a particular type of vehicle, i.e., motocross motorcycles, with TRADER to create a commercial impression similar to those created by TPI's TRADER marks.  The Infringing Mark is thus particularly likely to cause confusion with TPI's CYCLE TRADER mark.

26.     Defendants' Infringing Site was set up to offer advertising services that are identical to the Plaintiffs' advertising service through the same channel of trade that Plaintiffs use, i.e., the Internet.  Defendants set up the site to divert internet users seeking Plaintiffs' services to Defendants' site.

27.     Defendants have used the site intentionally to seek to cause confusion and trade on TPI's goodwill in its TRADER family of marks in order to reap undeserved profits.

28.     Defendants' use of a domain name and mark that are confusingly similar to TPI's TRADER Marks deceives the public, causes irreparable harm and damage to TPI, and unlawfully generates income for Defendants.

US2008 1845638.1

29.    When TPI first learned of Defendants' infringement, TPI demanded that Defendants cease using the Infringing Domain Name and Infringing Mark and abandon the application to register the mark.  A true and correct copy of the demand letter to Defendants is attached as Exhibit J.

30.    Nevertheless, Defendants continued using the Infringing Mark and refused to abandon the registration for it.  Accordingly, TPI filed an administrative proceeding to cancel Defendant Schellenberger's registration (Reg. No. 3,671,254), and Defendant subsequently informed Plaintiffs that Defendants intend to continue to use the Infringing Mark.

31.    Defendants therefore are infringing on TPI's rights and are specifically targeting consumers in this District through their interactive website, as illustrated by ads on Defendants' site for motorcycles located in Georgia, attached as Exhibit K.

## COUNT I
## FEDERAL TRADEMARK AND SERVICE MARK INFRINGEMENT

32.    TPI repeats and incorporates by reference the allegations contained in Paragraphs 1 through 31 as if set forth fully herein.

33.    Defendants have used and promoted the Infringing Domain Name and Mark.  Defendants' unauthorized use of confusingly similar imitations of TPI's registered TRADER Marks is causing and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that their imitation

12

TRADER business and services are affiliated, connected, or associated with TPI or have the sponsorship, endorsement, or approval of TPI, all in violation of 15 U.S.C. § 1114.

34.     Defendants' unauthorized use of confusingly similar imitations of TPI's registered TRADER Marks, notwithstanding their knowledge of TPI's ownership of the TRADER Marks, demonstrates an intentional, willful, and bad faith intent to trade on the goodwill of TPI's TRADER Marks and to cause confusion, deception, and mistake in the minds of TPI's customers and potential customers to the great and irreparable injury of TPI.  Defendants have acted knowingly and have been unjustly enriched thereby.

35.     Because Defendants' conduct is causing and is likely to cause substantial injury to the public and to TPI, TPI is entitled to injunctive relief, and to recover Defendants' trebled profits associated with the infringement, TPI's costs, and TPI's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II
## VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT

36.     TPI repeats and incorporates by reference the allegations contained in Paragraphs 1 through 31 as if set forth fully herein.

US2008 1845638.1

37.    By registering and using the Infringing Domain Name, Defendants have registered, trafficked in, and used a domain name that is confusingly similar to TPI's TRADER Marks.  Defendants registered the Infringing Domain Name with the bad faith intent of profiting unlawfully from TPI's TRADER Marks.

38.    Defendants registered and are using the Infringing Domain Name with the intent to divert consumers from TPI's online locations to their website accessible through the Infringing Domain Name and with the bad faith intent to profit from Plaintiffs' marks by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement of the sites.

39.    Defendants are operating their site with the intent to profit from the use of the Infringing Domain Name and the consequent confusion of internet users.

40.    Defendants' actions constitute cyberpiracy in violation of 15 U.S.C. § 1125(d).

41.    The unauthorized registration and use of the Infringing Domain Name have caused and unless enjoined, Defendants' registration and continued use of the Infringing Domain Name will continue to cause, irreparable injury to TPI and to the goodwill associated with TPI's TRADER Marks.

42.    Because Defendants' infringing conduct is causing and is likely to cause substantial injury to the public and to TPI, TPI is entitled to injunctive relief, and to

14

recover either statutory damages under 15 U.S.C. § 1117(d) or Defendants' trebled

profits, together with TPI's costs and reasonable attorneys' fees pursuant to 15

U.S.C. § 1117(a).

## COUNT III
## FEDERAL UNFAIR COMPETITION

43.   TPI repeats and incorporates by reference the allegations contained in

Paragraphs 1 through 31 as if set forth fully herein.

44.   Defendants' use of confusingly similar imitations of TPI's TRADER

Marks is causing and is likely to cause confusion, deception, and mistake by creating

the false and misleading impression that Defendants' business is affiliated,

connected, or associated with TPI or have the sponsorship, endorsement, or approval

of TPI, in violation of 15 U.S.C. § 1125(a).

45.   Defendants' actions demonstrate an intentional, willful, and bad faith

intent to trade on TPI's goodwill and to cause confusion, deception, and mistake in

the minds of TPI's customers and potential customers by implying a nonexistent

affiliation or relationship between Defendants and TPI to the great and irreparable

injury of TPI.

46.   Because Defendants' unfair competition is causing and is likely to cause

substantial injury to the public and to TPI, TPI is entitled to injunctive relief, and to

15

recover Defendants' trebled profits associated with the infringement, TPI's costs,

and TPI's reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

## COUNT IV
## DECEPTIVE TRADE PRACTICES UNDER O.C.G.A. § 10-1-370 *et seq.*

47.   TPI repeats and incorporates by reference the allegations contained in

Paragraphs 1 through 31 as if set forth fully herein.

48.   Defendants' acts constitute deceptive trade practices under the Georgia

Uniform Deceptive Trade Practices Act, O.C.G.A. 10-1-372 (a) (2007).

49.   Defendants' infringement has been willful and in bad faith, making this

an exceptional case under O.C.G.A. § 10-1-373 (b)(2) (2007).

## COUNT V
## COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION

50.   TPI repeats and incorporates by reference the allegations contained in

Paragraphs 1 through 31 as if set forth fully herein.

51.   Defendants have used confusingly similar imitations of TPI's TRADER

Marks with full knowledge of TPI's rights to the marks and with the willful and

calculated purpose of trading upon TPI's established goodwill and business

reputation, and in a manner calculated to imply false sponsorship of or approval by

TPI, for the purpose of misleading and deceiving the public.

16

52.    Defendants have used confusingly similar imitations of TPI's electronic URL addresses, with full knowledge of TPI's rights, and with the willful and calculated purpose of trading upon TPI's established goodwill and business reputation, and in a manner calculated to imply false sponsorship of or approval by TPI, for the purpose of misleading and deceiving the public.

53.    Defendants' conduct constitutes infringement of TPI's common law rights to the TRADER Marks and has damaged and will continue to damage irreparably TPI's goodwill and reputation unless enjoined by this Court.

54.    Independent of their liability for common law infringement, Defendants also engaged in unfair competition under the common law of Georgia and the other states in which they have engaged in their activities through their reliance on consumer mistakes and confusion, and their deliberate efforts to poach upon TPI's goodwill.

### COUNT VI
### CANCELLATION OF REGISTRATION NO. 3,671,254
### Lanham Act (15 U.S.C. §§ 1064 and 1119)

55.    TPI repeats and incorporates by reference the allegations contained in Paragraphs 1 through 31 as if set forth fully herein.

56.    Defendant Schellenberger is not entitled to maintain any rights to the MX TRADER mark, including those rights accompanying federal registration.

17

US2008 1845638.1

Accordingly, the Court should cancel Defendants' registration pursuant to 15 U.S.C. §§ 1064 and 1119.

## PRAYER FOR RELIEF

WHEREFORE, TPI prays:

1.     That Defendants, their partners, agents, employees, and all persons in active concert or participation with Defendants, be permanently enjoined and restrained from:

      a)    using the Infringing Domain Name and Infringing Mark and any trademark, company name, or domain name that is confusingly similar to TPI's TRADER Marks;

      b)    engaging in any other conduct which will cause, or is likely to cause, confusion, mistake, deception, or misunderstanding as to the affiliation, connection, association, origin, sponsorship, or approval of Defendants' online businesses or services with or by TPI;

      c)    otherwise infringing upon TPI's TRADER Marks or unfairly competing with TPI in any manner whatsoever; and

2.     That Defendants be ordered to transfer and assign to TPI or its designee the Infringing Domain Name.

US2008 1845638.1

3.    That Defendant Schellenberger's trademark registration for MX

TRADER, Registration No. 3,671,254 be ordered cancelled.

4.    That an accounting be ordered and judgment be rendered against

Defendants for all profits received from the sale or provision of products or services

directly or indirectly in connection with, or advertised or promoted in any manner,

utilizing the Infringing Domain Name and confusingly similar imitations of TPI's

TRADER Marks.

5.    That the award of profits resulting from Defendants' infringement,

unfair competition, and false designation of origin of products and services be

trebled.

6.    That TPI recover its actual damages.

7.    That the award of actual damages from Defendants' infringement,

unfair competition, and false designation of origin of products and services be

trebled.

8.    That TPI recover statutory damages under 15 U.S.C. § 1117(d) in the

amount of $100,000.00 per Infringing Domain Name.

9.    That Defendants be required to deliver up for destruction all advertising

and promotional materials, labels, cartons, brochures, business stationary, calling

cards, information sheets, posters, signs, and any and all other printed or graphic

US2008 1845638.1

materials of any type, including the plates, molds, or other means of producing the materials, which bear references to confusingly similar imitations of TPI's TRADER Marks, or to the Infringing Domain Name.

10.    That Defendants be directed to file with the Court and serve on TPI, within thirty (30) days after entry of a final injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

11.    That TPI be awarded its costs in connection with this suit, including reasonable attorneys' fees and expenses.

12.    That TPI have such other and further relief as the Court may deem just and proper.

Judith A. Powell
Georgia Bar No. 586125
Tywanda H. Lord
Georgia Bar No. 006848
KILPATRICK STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia  30309
(404) 815-6500  (telephone)
(404) 815-6555  (facsimile)

Attorneys for Plaintiffs

20

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D, the attached pleading complies with the font and point selections prescribed by Local Rule 5.1B and uses 14 point Times New Roman Font.

Judith A. Powell

US2008 1845638.1